888 So.2d 671 (2004)
TRANSCONTINENTAL INSURANCE COMPANY, Appellant/Cross-Appellee,
v.
JIM BLACK & ASSOCIATES, INC. and Pompanette, LLC, Appellees/Cross-Appellants.
Nos. 2D03-2083, 2D03-4371.
District Court of Appeal of Florida, Second District.
November 17, 2004.
*672 Chris Ballentine and Jamie Billotte Moses of Fisher, Rushmer, Werrenrath, Dickson, Tallay & Dunlap, P.A., Orlando, for Appellant/Cross-Appellee.
Mark A. Boyle of Fink & Boyle, P.A., Fort Myers, for Appellee/Cross-Appellant Jim Black & Associates, Inc.
No appearance for Appellee/Cross-Appellant Pompanette, LLC.
SILBERMAN, Judge.
Transcontinental Insurance Company (the Insurer) appeals, and Jim Black & Associates (the Insured) cross-appeals a partial summary judgment entered in a declaratory judgment action filed by the Insurer against the Insured. We affirm in part and reverse in part.
The Insurer provided commercial general liability (CGL) insurance coverage to the Insured between March 26, 1999, and March 26, 2002, under three consecutive policies. One policy provided coverage under CGL form CG 00 01 01 96 (the 1996 policy form), and the other two policies provided coverage under CGL form CG 00 01 07 98 (the 1998 policy form). After Pompanette, LLC, sued the Insured in federal court for patent infringement and unfair competition, the Insurer agreed to defend the Insured under a reservation of rights. The Insurer reserved the right to file an action to establish that the CGL policies did not cover Pompanette's claims and indicated that if it prevailed in such an action, it would seek repayment of its defense costs.
The Insurer then filed a declaratory judgment action, requesting that the trial court determine that it was not obligated to defend or indemnify the Insured in connection with the Pompanette litigation and that the Insurer was entitled to recover the costs that it had incurred in defending the Insured. The Insured filed a counterclaim, asking the trial court to declare that the Insurer was obligated to defend and indemnify it. The Insured also asked the court to declare that even if the Insurer ultimately established that it had no indemnity and defense obligations, it was not entitled to recover its defense costs. Both parties eventually sought summary judgment on the issues.
In its order granting partial final judgment, the trial court found that the Insurer's *673 policies "do not provide either coverage for or a duty to defend against a claim of Patent Infringement." Further, the trial court found that Pompanette's unfair competition claim triggered the Insurer's duty to defend under the advertising injury provisions of the insurance policies. However, the court stated that it was not determining whether the unfair competition claim was actually covered under the policies. The trial court subsequently entered an order awarding the Insured $15,055.75 in attorney's fees and costs on the basis that the Insured had prevailed on its claim concerning the duty to defend.
The Insurer argues that the trial court erred in finding that it has a duty to defend and in awarding attorney's fees and costs to the Insured. In its cross-appeal, the Insured argues that the trial court erred in finding that the insurance policies do not cover Pompanette's patent infringement claim. The Insured also asserts that even if the Insurer ultimately establishes that the Pompanette claims are not covered, the Insurer should not be permitted to recover the costs of defending the Insured against Pompanette. Finally, the Insured challenges this court's jurisdiction to consider this appeal.
We conclude that we do have jurisdiction, and we reverse, in part, the judgment because the insurance policies do not provide coverage for or a duty to defend against Pompanette's unfair competition claim. We also reverse the order awarding fees and costs to the Insured. As to the cross-appeal, we affirm the trial court's conclusion that the insurance policies do not provide coverage for or a duty to defend against Pompanette's patent infringement claim. However, we remand for resolution by the trial court the issue of whether the Insurer may recover the costs expended to defend the Insured against Pompanette's lawsuit.

JURISDICTION
The Insured contends that Florida Rule of Appellate Procedure 9.110(n)[1] provides the exclusive basis for appellate review of an order determining the existence or nonexistence of insurance coverage and that appellate review is not available if an order only determines whether a duty to defend exists. The Insured asserts that because the trial court's partial final judgment only addresses the duty to defend and not the existence of coverage, jurisdiction for this appeal is not available under rule 9.110(n). See Nationwide Mut. Ins. Co. v. Harrick, 763 So.2d 1133 (Fla. 4th DCA 1999) (holding that an order determining that the insurer had a duty to defend, but not determining coverage, was not appealable under rule 9.110(n)).
Rule 9.110(n) states the following: "Judgments that determine the existence or nonexistence of insurance coverage in cases in which a claim has been made against an insured and coverage thereof is disputed by the insurer may be reviewed either by the method prescribed in this rule or that in rule 9.130."[2] Contrary to the Insured's argument that the partial final judgment only addresses the duty to defend, the judgment specifically concludes that the insurance policies provide no coverage *674 or duty to defend as to Pompanette's patent infringement claim. Indeed, in its cross-appeal, the Insured asks that we reverse that part of the judgment. Because the judgment resolves both coverage and duty to defend issues, the judgment is appealable under rule 9.110(n).
To the extent that the Insured's argument is that we must separately consider whether appellate jurisdiction exists over the partial resolution of Pompanette's unfair competition claim, again we conclude that we have jurisdiction. In Aetna Commercial Insurance Co. v. American Sign Co., 687 So.2d 834, 836 (Fla. 2d DCA 1996), this court, citing to Canal Insurance Co. v. Reed, 666 So.2d 888 (Fla.1996), specifically stated that we had jurisdiction to review a partial summary declaratory judgment that resolved the issue of an insurer's duty to defend but not the duty to indemnify. The Insured asserts that Aetna and Canal have been superceded by rule 9.110(n), and therefore, there is no appellate jurisdiction to review a judgment that determines only that there is a duty to defend and does not resolve whether there is a duty to indemnify.
In considering this argument, we note that subdivision (n) of rule 9.110 was established after the Florida Supreme Court stated that "it would be in the best interests of all the parties for coverage issues to be resolved as soon as possible." Canal, 666 So.2d at 892. In Canal, the court reviewed a declaratory judgment that resolved the issue of insurance coverage. The court reiterated that the order was appealable as a final order, but it suggested that "the Appellate Court Rules Committee consider an appropriate method for providing expedited review of these cases to avoid unnecessary delays in the final resolution of the underlying actions." Id. In response, the committee adopted subdivision (n) to rule 9.110, which took effect on January 1, 1997. See Amends. to the Fla. R.App. P., 696 So.2d 1103, 1124-26 (Fla.1996); Fla. R.App. P. 9.110 committee notes, 1996 amend.
Rule 9.110(n) provides an option for parties to obtain review of coverage issues either by the method established for final orders under rule 9.110 or through the expedited proceedings available for nonfinal orders under rule 9.130.[3] Although the Fourth District, in Harrick, stated that rule 9.110(n) limits appellate jurisdiction to the review of nonfinal orders that determine coverage issues, we conclude that the rule does not limit appellate jurisdiction but rather provides an alternative for expedited review of insurance coverage issues as suggested by the supreme court in Canal. Because rule 9.110(n) does not preclude review of a final judgment resolving an insurer's duty to defend, and because the exercise of appellate jurisdiction in this case is consistent with our decision in Aetna, we reject the Insured's argument and conclude that we have jurisdiction to review the partial final judgment determining that the Insurer has a duty to defend the Insured.

STANDARD OF REVIEW AND PLEADING REQUIREMENTS
Our review of the trial court's decision concerning the Insurer's duty to defend and to indemnify under the insurance policies is de novo. See Auto-Owners Ins. Co. v. Marvin Dev. Corp., 805 So.2d 888, 891 (Fla. 2d DCA 2001). If an insurance policy is not ambiguous, the construction of its terms is a question of law. *675 Aetna, 687 So.2d at 836. If the policy contains ambiguous provisions, those provisions "are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000); see also Hyman v. Nationwide Mut. Fire Ins. Co., 304 F.3d 1179, 1186 (11th Cir.2002). In order to assess the duty to defend, we must determine whether the allegations of Pompanette's complaint bring the case within the scope of coverage of the Insurer's policies. See Higgins v. State Farm Fire & Cas. Co., 29 Fla. L. Weekly S533, S534, ___ So.2d ___, 2004 WL 2201474 (Fla. Sept. 30, 2004) ("[A]n insurer's obligation to defend is determined solely by the claimant's complaint if suit has been filed."); Biltmore Constr. Co. v. Owners Ins. Co., 842 So.2d 947, 949 (Fla. 2d DCA 2003) ("An insurer's duty to defend a complaint depends solely on the allegations in the complaint filed by a third party against the insured."), review voluntarily dismissed, 846 So.2d 1148 (Fla.2003); State Farm Fire & Cas. Co. v. Tippett, 864 So.2d 31, 35 (Fla. 4th DCA 2003) ("A liability insurance carrier must defend the insured only when the initial pleadings fairly bring the case within the scope of coverage. However, if the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend.") (citations omitted).
The Insurer argues that in evaluating the sufficiency of Pompanette's complaint to invoke the duty to defend, the trial court erroneously relied on the fact that the complaint had been filed in federal court under the Federal Rules of Civil Procedure, which allow "notice pleading." The Insurer asserts that the trial court felt it had to more liberally construe Pompanette's complaint than if the complaint had been filed in state court, under the more stringent rules of pleading required by the Florida Rules of Civil Procedure. The Insurer adds that regardless of which rules of procedure apply, Pompanette's complaint did not contain sufficient allegations to bring the claims within the scope of the insurance coverage.
The Insured responds that all doubts as to whether the duty to defend exists in a particular matter must be resolved in favor of finding a duty to defend. It adds that the duty to defend must be interpreted broadly, and if the complaint alleged facts that created potential coverage, the Insurer must defend the Insured.
In Biltmore, this court reiterated that an "insurer's duty to defend a complaint depends solely on the allegations in the complaint filed by a third party against the insured." 842 So.2d at 949. Even under the more liberal federal pleading requirements, a third-party plaintiff's claims against an insured should be sufficiently described to allow a determination of whether a duty to defend arises under the allegations of the complaint. See Desai v. Tire Kingdom, Inc., 944 F.Supp. 876, 879 (M.D.Fla.1996) ("To comply with fair notice, a complaint should at least allege in general terms the acts, customs, practices, policies of the defendant in a manner sufficient to allow an informed response."). With these standards in mind, we turn to the question of whether the trial court properly resolved the issues of coverage and the Insurer's duty to defend the Insured against Pompanette's complaint.

PATENT INFRINGEMENT CLAIM
In its complaint, Pompanette alleged that it held a patent for a plastic port assembly and that the Insured was infringing on the patent by "selling ports embodying the invention disclosed and claimed in the Letters Patent." Pompanette further alleged that the Insured was *676 "manufacturing, selling, maintaining and demonstrating a plastic port assembly" under its name which infringed upon Pompanette's patent and, further, that the Insured was "inducing infringement by demonstrating apparatuses embodying the patented inventions." As a result of the Insured's actions, Pompanette claimed that it suffered reduced sales and a damaged reputation and that the public had been deceived.

UNFAIR COMPETITION CLAIM
Pompanette alleged that the Insured "has manufactured or sold or used or caused to be manufactured or sold or used ports embodying the above invention and having the distinctive design and appearance of" Pompanette's ports. It claimed that the Insured was unfairly competing with Pompanette by imitating Pompanette's ports and representing them to be the Insured's ports and by misleading and confusing purchasers into the belief that the ports have the same features as Pompanette's product. Further, Pompanette asserted that the Insured threatened to continue this conduct, damaging Pompanette's reputation and business.
Pompanette's prayer for relief as to both claims sought, among other things, to enjoin the Insured from (1) further infringement of the patent; (2) aiding, inducing, or contributing to infringement of the patent; (3) engaging in consumer deception; and (4) promoting, offering for sale, and selling ports that include the design element misappropriated from Pompanette.

ANALYSIS OF COVERAGE AND THE DUTY TO DEFEND
The trial court found that the Insurer does not owe a duty to defend the Insured against Pompanette's patent infringement claim and that the claim is not a covered claim. However, the court found that under the advertising injury provisions of the insurance policies, the Insurer owes a duty to defend the Insured against Pompanette's unfair competition claim. The Insurer argues that Pompanette's claims are not covered under the insurance policies and that the claims do not trigger the Insurer's duty to defend. We agree with the Insurer's arguments.

ADVERTISING INJURY UNDER THE 1996 POLICY FORM
The 1996 policy form provides, in pertinent part:
1. Insuring Agreement.
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply.
....
b. This insurance applies to:
(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;
(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;
....
SECTION V  DEFINITIONS

*677 1. "Advertising injury" means injury arising out of one or more of the following offenses:
a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;
b. Oral or written publication of material that violates a person's right of privacy;
c. Misappropriation of advertising ideas or style of doing business; or
d. Infringement of copyright, title or slogan.
Although the 1996 policy form[4] does not define the terms "advertisement" or "advertising," it does define the term "advertising injury." Therefore, we must consider whether Pompanette's complaint alleged an "advertising injury."
The crux of Pompanette's complaint was that the Insured (1) misappropriated the design of Pompanette's ports, and the design was protected by a patent; (2) manufactured, demonstrated, and sold such ports in violation of Pompanette's patent; and (3) unfairly competed with Pompanette by imitating Pompanette's ports and representing that the ports were the Insured's ports. The Insured argues in this appeal that Pompanette's claims fall within the policy definition of "advertising injury" relating to the misappropriation of advertising ideas or style of doing business or the infringement of Pompanette's copyright, title, or slogan.
On its face, Pompanette's complaint asserted claims arising from the Insured's alleged misappropriation of the port design and an infringement of Pompanette's patent. These allegations differ from what would be required to allege a complaint for an "advertising injury" as defined in the 1996 policy form. For example, the complaint did not assert oral or written publication of slanderous, libelous, or disparaging material, or material violating a person's right of privacy. It also did not claim that any advertising ideas or styles of doing business were misappropriated. Although the complaint asserted an infringement of Pompanette's patent, it did not allege infringement of any copyright, title, or slogan. See Gencor Indus., Inc. v. Wausau Underwriters Ins. Co., 857 F.Supp. 1560, 1562-64 (M.D.Fla.1994) (holding that a claim for patent infringement did not constitute an advertising injury under policy language virtually the same as that contained in the 1996 policy form and concluding that a patent infringement and inducement to infringe do not constitute misappropriation of advertising ideas or style of doing business); Portionpac Chem. Corp. v. Sanitech Sys., Inc., 217 F.Supp.2d 1238, 1244 (M.D.Fla.2002) ("To prevail on a claim of copyright infringement, the plaintiff must prove ownership of a valid copyright, as well as copying of constituent elements of the work that are original.").
Additionally, nothing that was before the trial court for consideration in connection with the motions for summary judgment reflects that Pompanette's claims are covered or invoke the Insurer's duty to defend. As a result, we conclude that there is no coverage for Pompanette's claims and the Insurer is not obligated to defend against those claims under the 1996 policy form.

ADVERTISING INJURY UNDER THE 1998 POLICY FORM
The 1998 form policy provides, in pertinent *678 part:[5]
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.
....
b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.
....
SECTION V  DEFINITIONS
1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.
....
14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication of material that violates a person's right of privacy;
f. The use of another's advertising idea in your "advertisement"; or
g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".
Under the 1998 policy form, the issue is again whether the unfair competition or patent infringement claims are covered claims or otherwise give rise to a duty to defend. Although the 1998 policy form differs from the 1996 policy form in several respects, it is still evident that Pompanette's claims are not covered and the Insurer is not obligated to defend against the claims.
Pompanette's claims were not based on any alleged "oral or written publication of material" that is slanderous, libelous, disparaging, or in violation of a person's right to privacy. Moreover, the policy defines "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." Although the complaint alleged demonstration of the port and sought to prohibit promotion of the port, it did not allege a claim for injury as a result of any notice that was broadcast or published. Pompanette's complaint also did not allege the *679 Insured's use of another's advertising idea in an advertisement, and it did not assert infringement of a copyright, trade dress, or slogan in an advertisement. Therefore, we conclude that the complained of activities do not fall within the policy terms so as to constitute "advertising injuries" under the 1998 policy form and they do not trigger coverage or a duty to defend under the policy.

CONCLUSION
Because Pompanette's complaint did not state a cause of action seeking recovery for damages incurred as a result of activities covered by the Insurer's policies, and the record did not establish any basis for coverage or a duty to defend by the Insurer, we reverse that portion of the partial final judgment that held that the Insurer has a duty to defend the insured as to the unfair competition claim. We remand with directions that the trial court enter judgment in favor of the Insurer with respect to both coverage and the duty to defend, relating to the unfair competition claim. We affirm the trial court's decision that the patent infringement claim is not covered under the insurance policies and that the Insurer is not obligated to defend the Insured as to that claim. In light of our decision, we reverse the order granting attorney's fees to the Insured as the prevailing party in the declaratory judgment action. Finally, we remand for the trial court to determine the Insurer's right to recover the costs of defense that it incurred while defending the Insured under a reservation of rights.
Affirmed in part, reversed in part, and remanded.
WHATLEY and VILLANTI, JJ., Concur.
NOTES
[1] Because subdivision (l) of rule 9.110 was deleted in 2003, subdivision (n) has been redesignated as subdivision (m). See Amends. to Fla. R. Civ. P. (Two-Year Cycle), 858 So.2d 1013, 1015 n. 2 (Fla.2003). However, the text of the rule did not change. Our opinion will refer to the pre-amendment version of rule 9.110 because that was the rule in effect at the time the trial court addressed the issues now under review.
[2] Florida Rule of Appellate Procedure 9.130 provides procedures for appellate review of certain nonfinal orders.
[3] Rule 9.130 provides expedited review as compared to rule 9.110 because a record is not prepared and the initial brief is due within fifteen days of filing of the notice of appeal. Compare Fla. R.App. P. 9.130(d), (e) with Fla. R.App. P. 9.110(e), (f).
[4] The 1996 policy form also contains exclusions, which we have not quoted, because they are not material to our decision.
[5] As with the 1996 policy form, the 1998 policy form contains exclusions, which we have not quoted, because they are not material to our decision.