NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JOHN KIEFFER,                          )
                                       )
            Appellant,                 )
                                       )
v.                                     )        Case No. 2D17-4233
                                       )
ATHEISTS OF FLORIDA, INC., and         )
EDWARD GOLLOBITH,                      )
                                       )
            Appellees.                 )
_____ )

Opinion filed May 1, 2019.

Appeal from the Circuit Court for
Hillsborough County; Paul L. Huey,
Judge.

David M. Caldevilla of de la Parte &
Gilbert, P.A., Tampa; and Craig E.
Rothburd of Craig E. Rothburd, P.A.,
Tampa, for Appellant.

R. Gale Porter, Jr., of Porter Law Group,
LLC, Tampa, for Appellees.


CASANUEVA, Judge.

John Kieffer appeals an order granting summary judgment against him on

his claim of defamation filed against Atheists of Florida, Inc. (AOF), of which he used to

be president, and Edward Gollobith, a member and director of AOF.[1]  Mr. Kieffer

alleged that Appellees defamed him by stating that he misappropriated AOF funds.  The

trial court determined that Mr. Kieffer's defamation claim must fail because the

statements regarding misappropriation were substantially true and were protected by

qualified privilege.  We conclude that Appellees failed to meet their burden for entry of

summary judgment, and we therefore reverse and remand for further proceedings.

## I. FACTS

AOF filed an action alleging numerous claims, including conversion and

FDUTPA[2] violations, against Mr. Kieffer and other former AOF members.  In a

consolidated action, Mr. Kieffer filed a claim against Appellees alleging defamation

based on statements published by Appellees that Mr. Kieffer had misappropriated AOF

funds.[3]

The statements alleging misappropriation involved two donations totaling

$5045, which Mr. Kieffer deposited into a newly created AOF bank account, and a

check in the amount of approximately $18,000 made out to attorney John McKnight.

Mr. Kieffer alleged that he had been given proper authority to transfer the funds to

attorney McKnight on behalf of AOF.  He also alleged that he was acting with proper

authority in depositing the $5045 into a new AOF account.  Thus, he argued that there

---

[1]The order on appeal also addressed a claim of defamation filed by former AOF member Ellen Beth Wachs.  Ms. Wachs did not appeal the order.

[2]Florida Deceptive and Unfair Trade Practices Act, § 496.416, Fla. Stat. (2016).

[3]Mr. Kieffer also filed a declaratory action against AOF challenging, among other things, his removal as an officer and member of the organization.  That matter is no longer pending.

was no misappropriation of funds and that Appellees' statements constituted defamation.

Prior to the summary judgment on appeal, AOF filed a motion for partial summary judgment on its conversion and FDUTPA claims. In ruling on that motion for partial summary judgment, the trial court determined that genuine issues of material fact existed as to whether Mr. Kieffer had authorization from AOF to write the check to attorney McKnight; thus, it denied the motion for summary judgment of conversion as to the $18,000 check. However, the court did grant summary judgment as to the conversion of $5045 in donations and granted summary judgment on a FDUTPA violation for failing to remit the donations.

Appellees filed a subsequent motion for summary judgment seeking to dispose of Mr. Kieffer's defamation claim. Based in part on its earlier partial summary judgment order, the trial court granted Appellees' motion for summary judgment as to the defamation claim, finding that it had already concluded that Mr. Kieffer had misappropriated some amount of funds (the $5045 in donations), thus rendering the statement substantially true. The court concluded that the remaining questions of fact involving the $18,000 check did not preclude summary judgment as to the defamation claim and granted Appellees' motion for summary judgment. This appeal followed.

Mr. Kieffer argues that conversion and misappropriation are not the same thing and thus the court's finding of *conversion* does not make the statements regarding *misappropriation* substantially true. Therefore, he argues, the court erred in entering judgment in favor of Appellees based on the substantial truth doctrine. Further, Mr. Kieffer argues that while he was found to have converted $5045, the challenged

statements allege that Mr. Kieffer misappropriated not just the $5045 in donations but also the check in the amount of approximately $18,000. Mr. Kieffer argues that a material dispute of fact remains regarding the $18,000 check and that summary judgment was improper for this reason as well.

## II. ANALYSIS

We review an order granting final summary judgment de novo. Dahly v. Dep't of Children & Family Servs., 876 So. 2d 1245, 1248 (Fla. 2d DCA 2004). In seeking summary judgment, the movant must conclusively demonstrate that there is an absence of genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Id. If the movant meets this burden, the opposing party

> must prove the existence of genuine triable issues. If the record reflects the existence of any genuine issue of material fact or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, that doubt must be resolved against the moving party, and summary judgment must be denied.

Id. at 1248-49 (citation omitted); see also Thomas v. Tampa Bay Downs, Inc., 761 So. 2d 401, 404 (Fla. 2d DCA 2000) ("[I]f there exists the possibility of any issue or even 'the slightest doubt that an issue may exist,' a motion for summary judgment must be denied." (citation omitted)). In considering "a motion for summary judgment, the trial court must accept as true every factual allegation and every reasonable inference which can be drawn therefrom which is favorable to the nonmoving party." Pep Boys v. New World Commc'ns of Tampa, Inc., 711 So. 2d 1325, 1328 (Fla. 2d DCA 1998).

A claim of defamation requires "the following five elements: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a

private person; (4) actual damages; and (5) statement must be defamatory." Jews For Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008).  Clearly, a false statement about another is a required element of defamation.  Cape Publ'n, Inc. v. Reakes, 840 So. 2d 277, 279-80 (Fla. 5th DCA 2003).  However, "falsity only exists if the publication is substantially and materially false, not just if it is technically false."  Smith v. Cuban Am. Nat'l Found., 731 So. 2d 702, 707 (Fla. 3d DCA 1999).

"Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true."  Id. at 706.  "The question of falsity, the [Supreme] Court held, 'overlooks minor inaccuracies and concentrates upon substantial truth.' "  Id. at 707 (quoting Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516 (1991)).  Furthermore, in determining whether a statement is "substantially true," the statement in question must be read in full context of its publication.  Id. at 705-06.

"Where a communication is ambiguous and reasonably susceptible of a defamatory meaning, it is for the trier of fact to decide whether the communication was understood in the defamatory sense."  Perry v. Cosgrove, 464 So. 2d 664, 666 (Fla. 2d DCA 1985); see also Pep Boys, 711 So. 2d at 1328 ("The questions of whether the broadcast contained false statements and/or statements that could be interpreted as false are questions of fact which should be left for a jury to determine where the communication is ambiguous and is reasonably susceptible of a defamatory meaning.").

In this case, the court appears to have relied on both the substantial truth doctrine and qualified privilege in disposing of the defamation claim.  First addressing the substantial truth doctrine, the court noted that it had already determined that Mr.

Kieffer "misappropriated *some* of the Organization's funds."  It concluded without discussion that the "sting" of the allegedly defamatory statements derived from the statement that Mr. Kieffer misappropriated AOF funds, not from specific amounts allegedly taken.  And it noted that under the substantial truth doctrine, "statements are not to be held to the exact facts or to the most minute details of the transactions published."

Next, the court discussed qualified privilege.  Despite noting that Appellees chose *not* to argue qualified privilege as a basis for summary judgment, the court determined that "the allegedly defamatory statements fall under the ambit referred to as a 'qualified business privilege' " and that the Appellees' "actions were taken with good motive."

The trial court's order relies heavily on qualified privilege, a defense that was not asserted or argued as a basis for summary judgment.  In fact, counsel for Appellees expressly stated that he was not relying on qualified privilege because that would bring motive into the analysis.  Instead, Appellees relied solely on the argument that the statements regarding misappropriation of funds were substantially true.

Qualified privilege is an affirmative defense, and the burden of proving it rests with the defendant.  Healy v. Suntrust Serv. Corp., 569 So. 2d 458, 460 (Fla. 5th DCA 1990).  Because Appellees did not argue qualified privilege as a basis for summary judgment, we will not use it as a basis for affirming summary judgment on appeal.  See Am. Ideal Mgmt., Inc. v. Dale Vill., Inc., 567 So. 2d 497, 498 (Fla. 4th DCA 1990) (considering only the defenses of qualified privilege and publication where

appellees claimed the statements were true but did not ground their motion on that issue and argued only qualified privilege and lack of publication).[4]

Thus, we are left to consider whether the statements were substantially true. In determining that the statements regarding misappropriation of funds were substantially true, the court simply stated that it previously found that "Kieffer misappropriated *some* of the Organization's funds" and then concluded that the "sting" is the same regardless of how much was misappropriated.

While the court stated that it previously found that Mr. Kieffer had misappropriated funds, in fact, the prior partial summary judgment order found that the tort of conversion occurred when Mr. Kieffer failed to remit the $5045 in donations for a number of months. And, based on this same conduct, the court found that a FDUTPA violation had occurred pursuant to section 496.415(15) for failure to provide complete and timely payment of the donations to AOF. Critically, the court made no finding of wrongful intent. In fact, the court expressly noted that conversion does not require wrongful intent, and thus conversion occurred when Mr. Kieffer failed to timely remit the $5045 in donations to AOF *regardless* of whether Mr. Kieffer believed he had authority to hold the funds and deposit them into a new AOF account.[5]

_____

[4]Even if we were to consider qualified privilege, we note that "[w]hether the privilege exists or has been exceeded in some manner creates a mixed question of law and fact *which normally should be determined by the trier of fact*. The existence of a qualified privilege vanishes if the statement is made with malice, or to too wide an audience." Healy, 569 So. 2d at 460 (emphasis added). Here, the circumstances and motives surrounding the publication of the statements were very much in dispute. Under such circumstances, the presumption of good faith does not attach and would be a disputed fact remaining to be resolved. Cf. Thomas, 761 So. 2d at 404 (discussing essential elements of qualified privilege).

[5]The trial court's partial summary judgment order states, in part:

The same may not be said of misappropriation. "A reasonable person would equate the term 'misappropriation' with theft," which does involve wrongful intent. Healy, 569 So. 2d at 459-60. Because misappropriation is reasonably thought to involve wrongful intent, we cannot conclude as a matter of law that conversion is necessarily tantamount to a finding of misappropriation. Cf. id. at 460 ("Clearly, Healy's failure to comply with Suntrust's transfer procedures alone was not a theft or misappropriation.").

"A 'statement is substantially true *if its substance or gist* conveys essentially the same meaning that the truth would have conveyed,' " Jews For Jesus, 997 So. 2d at 1107-08 (quoting Standard Jury Instructions—Civil Cases (No. 00–1), 795

---

> "A conversion occurs when a person who has a right to possession of property demands its return and the demand is not or cannot be met." Shelby Mut. Ins. Co. of Shelby, Ohio v. Crain Press, Inc., 481 So. 2d 501, 503 (Fla. 2d DCA 1985). *Importantly, no wrongful intent is necessary to accomplish a conversion* . . . . "The tort [of conversion] may be established upon a showing of the taking by the defendant of personal property belonging to the plaintiff upon a mistaken belief as to the legal right of the defendant to the converted property." Ciamar Marcy, Inc. v. Monteiro Da Costa, 508 So. 2d 1282, 1283-84 (Fla. 3d DCA 1987).
> Here, regardless of what Kieffer and Wachs believed about the effectiveness of their expulsion, it is undisputed that they received the subject checks made out to AOF at a time when they were officers and member [sic] of AOF and failed to remit the funds to AOF for a number of months.

(Emphasis added.) Noting again that "intent is not an element of conversion," the court found AOF entitled to summary judgment on the count of conversion totaling $5045 and found a FDUPTA violation based on the same facts. The court stated it did not find for AOF as to conversion of the $18,000 check because "there are multiple questions of fact as to whether during the time Wachs and Kieffer had possession of those funds and deposited them with John McKnight, they had explicit authorization from AOF to do so."

- 8 -

So. 2d 51, 57 (Fla. 2001)), or "if the 'gist' or the 'sting' of the statement is true," Smith, 731 So. 2d at 706. Assuming the sting of an allegation of misappropriation stems, at least in part, from the wrongful intent associated with the allegation, we cannot say that conversion or failure to timely remit donations *with no wrongful intent* conveys the same meaning as misappropriation. The difference is even more striking when the amounts involved are considered, as the trial court's finding of conversion and FDUTPA violation was limited to $5045, while the challenged statements allege misappropriation of over $23,000.

While Appellees point out that misappropriation may in some circumstances also be considered conversion, this overlap merely highlights the ambiguity of the communication, requiring that it be resolved by a trier of fact and not on summary judgment. See Pep Boys, 711 So. 2d at 1328; Perry, 464 So. 2d at 666. Thus, drawing all reasonable inferences in favor of Mr. Kieffer, as we must on summary judgment review, Appellees have failed to establish that the challenged statements are not reasonably susceptible of a defamatory meaning.

### III. CONCLUSION

In short, Appellees have failed to conclusively demonstrate on this record that they are entitled to judgment as a matter of law on Mr. Kieffer's defamation claim. Accordingly, we conclude that it was error for the trial court to grant summary judgment, and we reverse.

Reversed and remanded for further proceedings.

KELLY and ATKINSON, JJ., Concur.